UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**CYRULI SHANKS HART &**
**ZIZMOR LLP**
420 Lexington Avenue, Suite 2320
New York, New York 10170
(212) 661-6800
(232) 661-5350 (fax)
Jeffrey C. Ruderman, Esq. (JR-7812)
JRuderman@cshzlaw.com
Attorneys for Defendant
David Scott Cantin

| | |
|---|---|
| FIDELITY WARRANTY SERVICES, INC., and JIM MORAN AND ASSOCIATES, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>EDISON MOTOR CARS, INC. d/b/a BRAD BENSON HYUNDAI, BRAD W. BENSON, DAVID SCOTT CANTIN<br><br>    Defendants. | Civil Action No.: 3:16-cv-05728-MAS-LHG<br><br>**APPLICATION IN SUPPORT OF DEFENDANT DAVID SCOTT CANTIN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. 12(b)(5) AND, IN THE ALTERNATIVE, FOR AN ORDER VACATING CLERK'S ENTRY OF DEFAULT** |

**DAVID SCOTT CANTIN**, a defendant in the above-captioned matter (the "Defendant" or "Cantin"), by and through his counsel, Cyruli Shanks Hart & Zizmor LLP, ("CSHZ"), respectfully submits this Application in Support of Motion for Order Vacating Clerk's Entry of Default (the "Motion"), and respectfully states as follows:

## BACKGROUND

1. On or about September 20, 2016, Plaintiffs Fidelity Warranty Services, Inc. and Jim Moran and Associates, Inc. (the "Plaintiffs") commenced this action with the filing of the Summons in Civil Case and Complaint (the "Complaint"); *See*, Docket Nos. 1-2.

2. Corporate defendant Edison Motor Cars, Inc. owned and operated an automotive

dealership under the name Brad Benson Hyundai (hereinafter "Edison"). Defendant Brad W. Benson (hereinafter "Benson") owned a majority share of Edison and was its sole director and president. Cantin owned approximately 10% of the shares and was Edison's Vice President.

3. In their Complaint, Plaintiffs claim that on September 20, 2007, Edison entered into an administrative agreement with JM&A Group (the "Agreement"), defining "Group" as Plaintiffs. *See*, Docket Nos. 1-2. Fidelity Warranty Services Inc. ("Fidelity"), though, was the only signatory to the Agreement and the Agreement's references to its affiliates make the parties to the Agreement vague.

4. On or about December 29, 2016, Plaintiffs filed a Request for Entry of Clerk's Default Against Cantin (the "Request for Entry of Default"). *See*, Docket No. 13. Filed as Exhibit A to the Request for Entry of Default is the affidavit of service executed by Mr. Julio Ascorra (the "Affidavit of Service"); *See*, Docket No. 13, Ex.A.

5. The Affidavit of Service alleges the Summons and Complaint was served on Cantin via substitute service by leaving a copy with Mr. Michael Voight, stated as co-occupant at Cantin's alleged usual place of abode, 22866 Beckledge Terrace, Malibu, California 90265-4902. *See*, Docket No. 13, Ex. A.

6. Cantin does not, nor has he ever, resided at 22866 Beckledge Terrace, Malibu, California (the "Beckledge Residence"). *See*, Declaration of David Scott Cantin in Support of Motion (the "Cantin Declaration") submitted herewith, at ¶ 8. Although he does maintain a property in Malibu at 7123 Birdview Drive, for the past two years Cantin has resided in the State of New Jersey. *See*, Cantin Declaration at ¶ 8.

7. In addition, Cantin does not know, nor has he ever co-occupied a residency with, Mr. Michael Voight. *See*, Cantin Declaration at ¶ . As a result Cantin had no knowledge of this

action until defendant Benson telephoned him on November 6, 2017, and notified him of the pending motion for default judgment. *See*, Docket No. 28 & Cantin Declaration at ¶ 10.

8.  As Cantin never resided at the Beckledge Residence, he did not receive notice of any subsequent documents filed in this proceeding. The "Service List" included on all subsequent filings stated the corresponding document was served via U.S. Mail at the Beckledge Residence. *See, i.e.* Docket No. 17, p. 3. Cantin never received any of these documents. *See*, Cantin Declaration at ¶ 10.

## LEGAL ARGUMENT

### I.

### PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION PURSUANT TO F.R.C.P. 12(b)(5)

#### A.

#### Lack of Personal Jurisdiction

9.  A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. *See Lampe v. Xouth, Inc.*, 952 F.2d 697 (3d Cir. 1991). F.R.C.P. 12(b)(5) states the defense of insufficient service may be asserted by motion before any responsive pleading is served.

10. It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment. *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Accordingly, if a Defendant is not properly made a party to the action by effective service, he would not be bound by any judgment rendered. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

11. As stated above, Cantin does not, nor has he ever, resided at the location served by Plaintiffs, the Beckledge Residence. However, even if Cantin owned or shared the Beckledge

Residence, the substitute service described in the Affidavit of Service is insufficient to obtain personal jurisdiction against Cantin as he did not reside there and, even according to Plaintiffs, Malibu is not where Cantin resides.

12. The Complaint states "Cantin is an individual residing in Monmouth County, New Jersey, and is otherwise *sui juris*. At all times relevant, Cantin regularly conducted business in Middlesex County, New Jersey, was part-owner of Edison, and owns property in New Jersey" (*see* Ex. A, ¶ 5). The Complaint makes no mention of Cantin's usual place of abode being in Malibu, California, as stated on the Affidavit of Service (*See*, Docket No. 13, Ex.A).

13. Accordingly, in order to obtain personal jurisdiction against Cantin, Plaintiffs must either serve him personally or at his usual place of abode, which Plaintiffs' state is "in Monmouth County, New Jersey." Plaintiffs did neither, and as a result, this Court never obtain personal jurisdiction against Cantin and the complaint should therefore be dismissed.

**B.**

**Lack of Subject Matter Jurisdiction**

14. This matter should be dismissed for lack of subject matter jurisdiction as the parties involved are not citizens of different states in violation of 28 U.S.C. § 1332. Plaintiffs correctly assert that the Defendants reside in New Jersey, own property in New Jersey, operate, conduct, engage in, and carry on business in New Jersey. (*See*, Docket Nos. 1-2, ¶ 7). Plaintiffs claim they are both organized under the laws of and have their principal place of business in the State of Florida, thereby allegedly establishing complete diversity.

15. Yet in another action, *Fidelity Warranty Services, Inc. and JM&A Group v. JJD Hyundai Associates, LLC, et. al.*, Docket # MER-L-490-16, counsel for Plaintiffs Fidelity and JMA certified both entities were registered in the County of Mercer, New Jersey, sufficient for

venue to be placed there (copy of the Certification of Mr. Eugene M. Banta, Esq. annexed to the accompanying Ruderman Certification as Exhibit A).

16. Plaintiffs should not be permitted to claim they are citizens of New Jersey before one Court and deny it in the next. Rule 4.:3-2, Venue in the Superior Court of New Jersey, states that venue shall be laid in the county "in which any party to the action *resides* at the time of its commencement." Mr. Banta in Exhibit A, ¶ 3, emphasized the specific section referencing Plaintiffs' residence, which he asserted was in the State of New Jersey. Plaintiffs should not be permitted to have their cake and eat it too. As there is no diversity this action should be dismissed for lack of subject matter jurisdiction.

### C.

### The Action Should Be Dismissed Pursuant to F.R.C.P. 4(m) as Plaintiffs Failed to Serve Cantin Within 90 Days After the Complaint Was Filed

17. Rule 4(m) provides that the District Court must dismiss the complaint if defendant is not within 90 days after the filing of the complaint. *See* F.R.C.P. 4(m). Plaintiffs' Complaint was filed on September 20, 2016, *See*, Docket No. 1.

18. This Court lacks personal jurisdiction over Cantin as it never served him with the Complaint. Plaintiffs are barred from curing their failure to serve service as more than 420 days have passed since the complaint was filed, well outside the parameters of F.R.C.P. 4(m). The complaint against Cantin must be dismissed.

### II.

### IN THE ALTERNATIVE, THE CLERK'S ENTRY OF CANTIN'S DEFAULT SHOULD BE VACATED

19. Motions to enter default judgment and vacate defaults are both governed by Rule

55 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 55(a)-(c). Rule 55(c) provides that "the court may set aside an entry of default for good cause," and the decision to vacate a default is left to the sound discretion of the Court. *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988).

20. In deciding whether to vacate a default, Court's consider three factors: 1) whether the plaintiff will be prejudiced if the default is lifted; 2) whether the defendant has a meritorious defense; and 3) whether culpable conduct of the defendant led to the default. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); s*ee also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1982).

21. Should there be any ambiguity in the above factors, the Third Circuit has consistently directed that those matters "should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 [3d Cir. 1982]).

A.

**Plaintiffs Will Not Be Prejudiced
If Cantin's Default Is Lifted**

22. The majority of this matter's docket has been subsumed with requests to enter defaults, motions to vacate defaults, and motions to enter judgments. There have been no substantive rulings or dispositive motion practice, and discovery has not commenced. Plaintiffs filed their motion to enter a default judgment against Cantin on October 11, 2017, and the Court has not yet issued its decision. This matter's infancy cannot support a claim of prejudice justifying a denial of relief and the Court should conclude the first factor outlined in *Feliciano* weighs in Cantin's favor.

23. Other than the presumed financial costs associated with opposing the instant

motion and a delay in enforcing any resulting judgment, Plaintiffs will not be prejudiced should Cantin's motion be granted. Courts have routinely found a delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default entered at any early state of a proceeding. *See Tozer v. Charles A. Krause Mill. Co.*, 1189 F.2d 242, 246 (3d Cir. 1951).

### B.

### Cantin Has A Meritorious Defense To All Causes of Action Asserted Against Him

24. A defendant moving to set aside a default judgment must establish a meritorious defense as there is no need to set aside a default if the defendant has no chance of prevailing. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d at 195. The burden on the defaulting party is to show a <u>potentially</u> meritorious defense, not a definite one. *Emasco Ins. Co. v. Sambrick*, 834 F. 2d 71, 74-75 (3d Cir. 1987).

#### *i.   Plaintiffs' Third Cause of Action Alleges Constructive Fraud*

25. The complaint is unclear as to the nature of Plaintiffs' claim in the third cause of action, labeled as one for constructive fraud. The specific allegations sound in aiding and abetting breach of a fiduciary duty, or a fraudulent conveyance, even though that theory of liability is specifically addressed in other counts. In either case, Plaintiffs have not sufficiently set forth the elements for constructive fraud.

26. Constructive fraud is not a commonly deployed stand-alone theory of liability in New Jersey. It is temptuously described by Justice Jacobs in *Bedrock Foundations Inc., v. Geo H. Brewster & Son., Inc.*, 31 N.J. 124, 136 (1959):

constructive fraud is not fraud at all but is descriptive of conduct which may in the eyes of the law give rise to certain consequences ensuing upon actual fraud; perhaps the law would be better without the term.

27. Plaintiffs appear to equate constructive fraud with equitable fraud by their statement that the individual defendants owed a "fiduciary duty" to Plaintiffs because they were "entrusted to operate" the Agreement and honor and provide refunds. Equitable fraud, though, only provides for an equitable remedy.

28. Therefore, if constructive fraud is the functional equivalent of equitable fraud, then Plaintiffs must sufficiently describe the conduct of the defendants that it thinks is actionable and are only entitled to equitable remedies. *Konsuvo v. Netzke*, 91 N.J. Super. 353, 371 (Chan. Div. 1996). But as Plaintiffs instead seek compensatory damage under Count III and not equitable relief, this claim seeking improper relief should be dismissed.

29. As previously stated, Plaintiffs claim Cantin owed a fiduciary duty to Plaintiffs because he "was entrusted to operate the Agreement," and specifically, to honor and provide refunds to Edison's customers for the benefit of Plaintiffs, even after the dissolution of Edison. (*See*, Docket Nos. 1-2, ¶ 63). Culminating in the claim that "through his exclusive conduct as an owner of Edison" Cantin defrauded Plaintiffs out of funds. (*See*, Docket Nos. 1-2, ¶ 63).

30. Cantin owes no fiduciary duty to Plaintiffs. The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. It arises between two parties when one party is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. *See In re Stroming's Will*, 12 N.J. super 217, 224 (App. Div.) (stating essentials of fiduciary relationship "are a reposed confidence and the dominant and controlling position of the beneficiary of the transaction"); *Blake v. Brennan*, 1 N.J. Super. 446 (Ch. Div. 1948)(describing

"the test [as] whether the relationship between the parties were of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other").

31.     The relationship between Plaintiffs and Edison is nothing more than an arms-length business relationship, and Cantin, as an employee of Edison, had no direct relationship with Plaintiffs as a business or fiduciary. Every corporation entrusts its employees to carry out its agreements. That does not make every employee a fiduciary of parties who contract with the corporation.

32.     The Complaint claims Cantin, through his exclusive conduct as an owner of Edison, abused his position and also defrauded Plaintiffs of funds. In truth, Cantin was informed of Edison's dissolution <u>after</u> Benson unilaterally initiated the process. Benson's autarchic management of Edison was well established. All decisions on the management of Edison were ordered by Benson, as majority shareholder, director, and president of Edison.

33.     It was routine for Benson to unilaterally make decisions on the management of Edison, such as issuing shareholder distributions arbitrarily without any consultation or prior notification. As stated in the Complaint, Benson unilaterally decided to sell the dealership to non-party DCN Automotive, LLC ("DCN") and dissolve the company. Cantin had no intent to defraud Plaintiffs as he was a passive owner and played no part in the decision to dissolve Edison.

34.     There is no privity of contract and Plaintiffs are prohibited from asserting a breach of contract against the individual defendants. Plaintiffs attempt to assert one in Count III, employing a convoluted constructive fraud claim with a reference to a non-existent fiduciary relationship, will not establish liability.

ii. *Plaintiffs' Fourth Cause of Action Alleges Cantin Violated N.J.S.A. 14A:6-12 and 14A:12-13*

35. Plaintiffs' second cause of action asserted against Cantin alleges he breached his "duty of care and statutory obligation owed (to Plaintiff) pursuant to N.J.S.A. 14A:6-12 & 14A:12-13." *See*, Docket Nos. 1-2, ¶ 67. Plaintiffs claim that under these statutes, "a creditor may assert a claim against the <u>shareholders</u> of a dissolved corporation if the undistributed assests are insufficient to satisfy its claim." (*emphasis added*); *See*, Docket Nos. 1-2, ¶ 68. The statute says nothing of the sort.

36. N.J.S.A. 14A:6-12 states that directors who vote for, or concur in, the decision to distribute assets to shareholders during the dissolution of the corporation without providing for all known debts, shall be jointly and severally liable to the corporation for the benefit of creditors. *See* N.J.S.A. 14A:6-12(1)(c).

37. N.J.S.A. 14A:6-12 does not state a creditor may assert a claim against shareholders of a dissolved corporation, <u>but only against the directors who voted or concurred in the decision to dissolve</u>. Benson, as director and majority shareholder, unilaterally decided to dissolve Edison. As Cantin was not a director of Edison, N.J.S.A. 14A:6-12 does not apply.

38. The other statute cited by Plaintiffs, N.J.S.A. 14A:12-13, states that a creditor who shows good cause for failing to file a claim in dissolution, may subsequently assert a claim against a shareholder to recover their shares of the proceeds following the dissolution or liquidation of a corporation.

39. Cantin as a minority shareholder, controlled only 10% of Edison's shares. The majority shareholder and principal, Benson, received the majority of proceeds from Edison's dissolution, and any claim for disgorgement would require a full accounting of all funds received by the individual defendants following Edison's dissolution and the basis for Plaintiffs' alleged

damages. The Complaint fails to adequately state the process by which Plaintiffs were damaged – including failing to reference Fidelity's relationship to this action whatsoever – and, most importantly, the Complaint does not state with specificity the damages Plaintiffs allegedly suffered. The Complaint vaguely discusses the "surplus of fees" owed to Edison and Plaintiffs' use of those funds to pay amounts owed for customer cancellations. (*See*, Docket Nos. 1-2, ¶ 37). There is no specificity as to how much of the "surplus of fees" were used or how they were applied.

40. Further, Plaintiffs claim that they eventually started refunding customers "out of its own funds," but this started no later than "August 2015." (*See*, Docket Nos. 1-2, ¶ 41). Again, even though this information is in their sole custody and control, Plaintiffs fail to state with specificity when they were allegedly harmed or by how much, only "in excess of $100,000." (*See*, Docket Nos. 1-2, ¶ 48). There must be an accounting to ascertain, with specificity, Plaintiffs' alleged damages.

41. In conjunction with the previously stated defenses, the need for such accounting will, on its own, constitute a meritorious defense for the purpose of vacating a default judgment. *See Display Equation, Inc. v. D.C. Industries, Inc.*, 134 F.R.D. 124, 125 (W.D. Pa. 1990) (need for an accounting is basis of meritorious defense).

### iii. *Plaintiffs' Fifth Cause of Action Alleges Unjust Enrichment*

42. Plaintiffs claim, that through liquidation and dissolution of Edison, Cantin unjustly obtained and retained a benefit without payment. *See*, Docket Nos. 1-2, ¶ 77. Specifically, under the Agreement, Plaintiffs allege Edison obtained some direct and some "contingent" benefit that remained a benefit of Edison if, and only if, its customers did not cancel

their contracts. *See*, Docket Nos. 1-2, ¶ 74.

43. To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. *Associates Commercial Corp. v. Wallia*, 211 N.J. Super 231, 243 (App. Div. 1986). The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights. Id. at 244.

44. To recover under this doctrine, the plaintiff must prove that the defendant "received a benefit, and that retention of the benefit without payment therefor would be unjust." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super 105, 108 (App. Div. 1966). Plaintiffs' claim Cantin obtained a contingent benefit which will vest "if and only if its customers did not cancel the relevant contracts." (*See*, Docket Nos. 1-2, ¶ 74). New Jersey law requires that a plaintiff have conferred an <u>actual and direct benefit</u> on the defendant. *See VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994), not the "contingent benefit" as referenced in the Complaint (*See*, Docket Nos. 1-2, ¶ 74). The alleged contingent benefits, which may or may not be conferred, do not satisfy the element necessary to allege unjust enrichment.

45. Unjust enrichment also requires a relationship conferring a direct benefit, not through some third party, i.e. Edison. *See Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 110 (App. Div. 1966) (denying recovery absent direct commercial relationship).Here, although Plaintiffs allege that Cantin was unjustly enrichment through Plaintiffs' agreement with Edison, there was no direct relationship between Cantin and Plaintiffs. Within the meaning of New Jersey's doctrine of unjust enrichment, Plaintiffs did not confer a direct benefit upon Cantin.

*iv.* <u>**Plaintiffs' Sixth Cause of Action Seeks a Declaratory Judgment**</u>

46. Plaintiffs final cause of action asserted against Cantin seeks a declaratory judgment affirming that Cantin remains liable, individually, for the refunds under the Agreement which allegedly survived its termination and the dissolution of Edison. *See*, Docket Nos. 1-2, ¶ 83-84.

47. As previously stated, Cantin was a minority shareholder of Edison and did not vote for nor concur in the decision to liquidate and dissolve the company. He was informed of Edison's dissolution after Benson unilaterally initiated the process. All decisions on the management of Edison were ordered by Benson, the majority shareholder, director, and President of Edison. Cantin individually owed, and continues to owe, no obligations to Plaintiffs under the Agreement.

### C.

### Cantin's Complete Ignorance of this Action Prohibits the Possibility of Any Culpable Conduct Regarding His Default

48. The final factor to be considered is whether the defendant's conduct was culpable in the default, that is, whether the defendant acted willfully or in bad faith in failing to answer the complaint. *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d at 657. *See also Int'l Brotherhood of Electrical Workers, Local Union 313 v. Skaggs*, 130 F.R.D. 526, 529 (D. Del. 1990) (a defendant exhibits culpable conduct if he fails to respond to the complaint willfully, in bad faith or as part of trial strategy).

49. For purposes of determining whether a default judgment should be vacated, culpable conduct includes not only acts intentionally designed to avoid compliance with court notices but also may include reckless disregard for repeated communications from plaintiffs and

the court, but neglect alone cannot sustain a default judgment. *Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir. 1984).

50. Cantin could not act in bad faith in connection with a proceeding he did not know existed. Cantin never resided at the Beckledge Residence, nor did he receive notice of any subsequent documents filed in this proceeding. As previously stated, Cantin had no knowledge of the Summons and Complaint – or of this action whatsoever – until defendant Benson telephoned him on November 6, 2017, and notified him of the pending motion for default judgment. *See*, Docket No. 28 & Cantin Declaration at ¶ 10.

## CONCLUSION

51. Based on the foregoing, David Scott Cantin respectfully requests this Court dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(5), and, in the alternative, for an order vacating the Clerk's entry of default, and grant any other relief the Court deems appropriate in the instant matter.

Respectfully submitted,

**CYRULI SHANKS HART
& ZIZMOR LLP**
420 Lexington Avenue, Suite 2320
New York, New York 10170
(212) 661-6800
(232) 661-5350 (fax)
JRuderman@cshzlaw.com
Attorneys for Defendant,
David Scott Cantin

/s/ Jeffrey C. Ruderman
By: Jeffrey Ruderman, Esq. (JR-7812)

Dated: November 28, 2017